**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2507-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL ROWEK,

     Defendant-Appellant.

_____

> Argued April 17, 2023 – Decided May 3, 2023
> Remanded by the Supreme Court November 21, 2023
> Resubmitted January 8, 2024 – Decided February 22, 2024
>
> Before Judges Whipple, Mawla and Walcott-Henderson.
>
> On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 21-0016.
>
> Timothy J. Foley argued the cause for appellant (Foley & Foley, attorneys; Sherry L. Foley and Timothy J. Foley, on the briefs).
>
> Robert J. Lombardo, Assistant Prosecutor, argued the cause for respondent (Robert J. Carroll, Morris County

Prosecutor, attorney; Robert J. Lombardo, on the briefs).

PER CURIAM

Defendant Michael Rowek appealed from convictions for driving while intoxicated (DWI), N.J.S.A. 39:4-50; careless driving, N.J.S.A. 39:4-97; and possession of a controlled dangerous substance (CDS) in a motor vehicle, N.J.S.A. 39:4-49.1, after a trial de novo based on the municipal record. We affirmed as to the driving charges but reversed and vacated as to the possession charge. On November 20, 2023, the New Jersey Supreme Court granted defendant's petition for certification and summarily remanded the matter for us to reconsider in light of State v. Michael Olenowski, ___ N.J. ___ (2023). Having undertaken that review, we reverse and vacate defendant's DWI conviction.[1]

The salient facts are recounted in our earlier opinion, State v. Rowek, A-2507-21 (App. Div. May 3, 2023). We only repeat what is necessary to address the issue on remand.

On August 9, 2020, at around noon, defendant struck the left side of a landscaper's trailer that was parked on the side of a small dead-end street in

---

[1] The conviction for careless driving, N.J.S.A. 39:4-97 remains.

Montville Township. The impact caused defendant's SUV to swerve across the street, onto the front lawn of a nearby house. Defendant's driver's side and front airbags deployed, and his vehicle tipped up on two wheels. Defendant was not visibly injured.

Police were summoned. Officer David Chieppa—who later testified at trial as the State's sole witness—was the first responder. Officer Chieppa testified he is not a "drug recognition expert," though he claimed to be familiar with the signs of drug abuse. Officer Chieppa found defendant outside, on the lawn, in the process of reaching into the SUV to retrieve items. The street was not crowded and had little traffic; it was sunny outside. He asked defendant for his driving credentials; defendant complied.

While defendant looked for his credentials, Officer Chieppa noted defendant was "stumbling and swaying." As their interaction continued, Officer Chieppa observed defendant's speech was slurred, and he appeared to have a "sleepy" or "tired and nonchalant" demeanor that did not "fit" the circumstances. When the officer asked what his destination was, and how he came to hit the truck, defendant claimed he had been driving to his office in Totowa. He could not explain why he had decided to turn down a dead-end residential street some

distance from Totowa, or how he hit the truck. Defendant claimed to suffer from periods where he would lose awareness of himself and "black out."

Based on the officer's limited experience, he suspected defendant was intoxicated. Upon looking into the car, he saw numerous loose "whole and half" pills scattered throughout the vehicle. A bag defendant was carrying also contained numerous prescription bottles, including some labelled "Suboxone," which is a prescription narcotic used to treat opioid addiction. Some bottles did not list the defendant's name. None of the pills were introduced as evidence or analyzed. Defendant also had a powdery substance on his face and in his nostril, and a bruise potentially from a hypodermic needle on his right arm.

Officer Chieppa suspected drug use. Defendant claimed the pills were either prescribed to him by a doctor or that they were dietary supplements. He claimed at various times to be taking certain medications for depression, as well as vitamin supplements, Adderall, and a drug called "Bubrieion"—which does not exist, but may be a mispronunciation of Buprenorphine, a pseudo-narcotic used to treat opioid use disorder. Buprenorphine is Suboxone's main ingredient.

Defendant agreed to perform a field sobriety test. Defendant stated he suffered from a back issue and flat feet, which affected his balance. He struggled substantially performing the tests. He stumbled, frequently swayed, lost his

4

balance, and had some difficulty complying with directions. Additionally, his pupils were "pinpoint," which Officer Chieppa testified his experience led him to believe defendant was intoxicated.

Officer Chieppa took defendant into custody, where he was read his rights and consented to a number of tests, including an "alcotest" for blood alcohol, which turned up negative (0.0%). Defendant was also given a urine test for other substances. However, the results of this urine test were not admitted into evidence because the expert who analyzed the results was seemingly unavailable to testify. Defendant was charged, pled not guilty, and the matter proceeded to trial in the municipal court.

Defendant called his own witness, a neurologist, Dr. Nabil Yazgi. Dr. Yazgi began treating defendant in December 2020, several months after the incident in question.

Dr. Yazgi opined defendant sought treatment to address episodes of "blacking out." The doctor performed a number of neurological tests on defendant, including an MRI,[2] and reviewed police reports as well as medical records obtained from Chilton Hospital, where defendant had been admitted on March 3, 2021. It was the doctor's opinion defendant suffered from "transient

---

[2] Dr. Yazgi stated the MRI came back "within normal limits."

A-2507-21

ischemic attacks" which led to "transient global amnesia" (TIA and TGA, respectively). These are circulatory system conditions, which describe a lack of blood flow to the brain. They are characterized by disorientation, a confused demeanor, and short-term forgetfulness. When pressed on cross examination as to whether drug use—like heroin, methamphetamines, and fentanyl could cause TGA, or present substantially similar effects, Dr. Yazgi admitted they could. He also disclosed he was aware of defendant's past use of heroin and sleeping pills.

The municipal court delivered its opinion in an oral decision, finding defendant guilty on all three charges. Upon de novo review, the Law Division agreed with the municipal court on substantially similar grounds, and sentenced defendant to an eight-year loss of license, two years ignition interlock, 180 days jail time, and costs and penalties totaling $1,390.

Defendant appealed, arguing because Officer Chieppa, was not qualified as a drug recognition expert, and because the State failed to produce any physical evidence defendant was actually under the influence of a prohibited substance, the State's case must necessarily fail as a matter of law because it cannot prove—beyond a reasonable doubt—defendant was in fact intoxicated.

We concluded that while less than overwhelming, the totality of the circumstances adequately supported a finding there was sufficient corroborative

6

evidence under State v. Bealor, 187 N.J. 574 (2006), to rely on Officer Chieppa's lay testimony that defendant was intoxicated. Defendant appealed.

On November 15, 2023, the Supreme Court issued its decision in State v. Michael Olenowski (Olenowski II), ___ N.J. ___, ___ (2023). In Olenowski I, the Court adopted a Daubert-like[3] standard for determining the reliability of expert evidence in criminal and quasi-criminal cases. State v. Olenowski (Olenowski I), 253 N.J. 133 (2023). After the standard determination, the case was remanded to be reviewed by a Special Master to conclude whether the Drug Recognition Expert (DRE) protocol satisfied the reliability standard of N.J.R.E. 702.[4] Olenowski II then held that Daubert-based expert reliability determinations would be reviewed de novo, and other expert admissibility issues would be reviewed under an abuse of discretion standard. Additionally, the Court found the record substantiated that DRE testimony satisfied the Daubert standard but implemented four limitations and safeguards.

Though Olenowski II focused largely on DREs, the Supreme Court reinforced Bealor's holding that testimony on intoxication due to drugs, whether expert or lay, requires corroborating evidence to be considered. In our earlier

---

[3] Daubert v. Merrell Dow Pharms. Inc., 509 U.S. 579 (1993).

[4] N.J.R.E. 702 codified the Daubert standard.

decision on the matter, we concluded—in addition to Officer Chieppa's observation that defendant was under the influence—the failed field sobriety test, the powder on defendant's face, and the track mark in his arm, were sufficient independent proofs to affirm the DWI.

In Olenowski II's discussion of Bealor the Court notes that testimony of the fact of a driver's intoxication is admissible without expert testimony, however it does require a sufficient aggregate of proofs to "connect the objective facts of intoxication with the proven presence of a cause of intoxication." Olenowski II, ___ N.J. at ___ (slip op. at 14) (quoting Bealor, 187 N.J. at 590-91). Thus, Olenowski II reiterates that "[i]mpairment instead must be proven by the State with independent evidence." Id. at ___ (slip op. at 98-99). In consideration of Olenowski II and Bealor, we now conclude the evidence is not sufficient and the DWI conviction should be reversed.

In its discussion, the Court addressed Bealor under the DWI statutory scheme in N.J. Id. at ___ (slip op. at 8). Bealor established that lay persons, such as Officer Chieppa, could testify that someone was intoxicated, but could not opine as to the cause of said intoxication when the intoxication is non-alcohol related. Bealor, 187 N.J. at 577. Though the cause of non-alcohol intoxication is inadmissible as lay testimony, the State is not required to present

8

expert testimony.  Id. at 591.  Essentially, the State must present evidence on a case-by-case basis sufficient to establish beyond a reasonable doubt that the defendant, while operating a motor vehicle, was under the influence of drugs. Id. at 589-91.

Olenowski II reiterated that in DWI cases, "facts of intoxication must be linked to proofs of the cause of intoxication.  For instance, proofs of . . . 'slurred and slowed speech,' . . . 'droopy eyelids,' . . . 'emotionless stare' may be linked with physical evidence of an intoxicating drug in the car or in the driver's control."  ___ N.J. at ___ (slip op. 11-12).  The Court found that the State must prove the defendant was intoxicated, and the cause was narcotics, hallucinogens, or other "habit-producing drugs."  Id. at ___ (slip op. 12).  Furthermore, in Bealor the fact that there was a positive marijuana blood test provided the sufficient, independent evidence to support conviction.  Bealor, 187 N.J. at 590. The lay testimony to the fact of intoxication along with the positive test were "more than sufficient" to "connect the objective facts of intoxication with the proven presence of a cause of intoxication."  Id. at 590-91; see also Olenowski II, ___ N.J. at ___ (slip op. 14).

Olenowski II furthered that the State needed to use independent evidence to support its burden, which included factual observations, driver's admission,

information or observation about recent drug use, or drugs or paraphernalia found in the vehicle. Olenowski II, ___ N.J. at ___ (slip op. 98-99) (citing Bealor, 187 N.J. 590-91).

Defendant argues on remand we should apply the twelve step DRE protocol announced in Olenowski II. However, Olenowski II does not extend those protocol or guidelines to lay witnesses, otherwise they would have noted so, since they did discuss lay testimony. Olenowski II, ___ N.J. at ___ (slip op. at 13). Olenowski II particularly only assesses whether the DRE protocol satisfied the reliability standard of N.J.R.E. 702, which the Court found it did. Id. at ___ (slip op. at 12). In the present case, Officer Chieppa was not qualified as an expert. Therefore, we decline to use the DRE protocol and its limiting factors to review in this matter.

The primary question is whether Officer Chieppa's observation testimony was sufficient under Bealor. It is clear under Olenowski II, impairment must be proven with independent evidence, which can include factual observations of impaired behavior by the arresting officer. However, observation alone is insufficient, without independent evidence, and the court would prefer such evidence to be in the form of toxicology reports or other corroborating evidence of drug use. Id. at ___ (slip op. 103-04).

A-2507-21

With the benefit of the guidance provided by <u>Olenowski II</u>, we now conclude the evidence the court used to corroborate the DWI, was insufficient as there was no physical evidence that defendant was under the influence to meet the State's burden of proof beyond a reasonable doubt. The lack of confirmation of some physical evidence means that the evidence in the record does not meet the burden required to support the connecting inferences of an "objective fact[] of intoxication" and a "presence of a cause of intoxication" to "conclude that . . . defendant drove while intoxicated." <u>Olenowski II</u>, ___ N.J. at ___ (slip op. 99) (second alteration in original) (quoting <u>Bealor</u>, 187 N.J. at 590-91).

Reversed and vacated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2507-21